## PIERCE v. SMITH.

If a party voluntarily receives money or any personal property which by contract he is not to receive till a subsequent day, the law will regard him as trustee for the payer, and apply the payment when due. And an averment of payment on the subsequent day, will be sustained by proof of such reception on the previous day.

Where A. contracted with B. to deliver him certain articles on the 26th of September, and on the 10th of May previous delivered a part of them, which were accepted by B.,—*Held*, that proof of the delivery and acceptance in May, would sustain the averment of delivery in September.

DEBT on bond dated March 26th, 1850. The condition of the bond, as set out upon oyer, recited that Smith had contracted with Pierce to convey to him a tract of land in Campton, on Pierce's paying a note of even date, for seven dollars per acre, " one half in forty-five days, and the other half in six months, in clothes-horses at fifty cents apiece, one of which he leaves with me for a pattern to have them made by."

The replication, after stating that the parties surveyed the land and ascertained its quantity to be thirty acres, alleged that on the 10th of May, 1850, Pierce delivered and Smith accepted two hundred and thirty-two " clothes-horses, such as is described in said writing obligatory," at fifty cents each, amounting to $116, of which $105 were applied in discharge of the sum then due, and $11 in part satisfaction of the sum to be paid in six months, and afterwards, on the 26th of September, 1850, Pierce delivered and Smith accepted one hundred and eighty-eight " clothes-horses, such as is described in said writing obligatory," at fifty cents each, in full discharge of the balance due of the sum to be paid on said 26th of September, 1850. This allegation of payment in manner and form as alleged, was traversed by the defendant, and the issue was joined.

Joel Pierce, Jr., a witness called by the plaintiff, testified that Smith came down and helped the plaintiff make a pattern for the clothes-horses, and this pattern was never

taken away by the defendant, but always remained in the plaintiff's shop, and no other pattern was ever left with Smith; nor was this otherwise than is herein stated. After this pattern was made, the plaintiff went on and manufactured other articles in all respects like it, and delivered two hundred and thirty-two of them, May 10th, 1850, which were indorsed upon the note and carried away by Smith, and one hundred and eighty-eight in September afterwards. Some time in September, 1850, Smith was at the plaintiff's shop, and Pierce asked him to take the delivery of the articles; he said he was in a hurry, but would come the next morning. He came as he had said, and Pierce and the witness handed the articles to Smith, and he counted them over and set them down on a slate, and remarked that there were more than enough. He then counted out so that he left his number one hundred and eighty-eight, and these he piled up together in the plaintiff's shop, and inquired of him if he could let them remain there. The plaintiff replied that he could, until he wanted to use the shop, and how long that would be he could not tell. The witness did not hear Smith make any objection to the articles; but about an hour afterwards, the plaintiff told the witness that he wanted him to make some more " hubs," for there were ten or fifteen of the one hundred and eighty-eight, that were cracked, and Smith thought he ought to furnish new ones instead. The plaintiff said he was under no obligation to make new ones, but as Smith thought he ought, he would. Thereupon the witness, with his brother, made the required number and placed them with the others which had been delivered to Smith, and within a day or two informed Smith of the fact, and he said he would come down and take them away. The hub, so called, is an essential part of the clotheshorse. It also appeared that the note was left by the parties with a third person, to be given up to Pierce whenever the new hubs should be made. The evidence was contra-

dictory whether the new hubs were furnished as early as the 26th of September or not.

On the 11th of November, 1850, the defendant stated to a witness that a deed of the land had been demanded of him, and requested a deed to be prepared, which was done by the witness and signed and acknowledged by Smith, but never delivered. The witness, Pierce, called the articles delivered sometimes clothes-horses and sometimes clothes-frames. They were not put together by the plaintiff; but the first lot were put together by Smith, and the last lot have remained at the shop in the same condition as when delivered. Upon cross-examination, he said that until put together he should not call the article a clothes-horse, but only the parts of a clothes-horse. A clothes-horse was shown to the jury. The arms are fastened at one end to the hub by a strong wire, and are also supported by braces, which are fastened to the arms by small wooden pins. Pierce did not furnish these pins nor the wire. But the pattern before mentioned was not put together, nor did it have these pins, nor the wire, though it did have pin holes for the pins and a groove for the wire. There was also proof of Smith's declarations that he was to find the wire himself.

The note referred to and the indorsement thereon were as follows :

" For value received I promise to pay Elisha Smith or order seven dollars per acre, on survey, for a certain piece of land described in a bond herewith dated, to be paid in clothes-horses at fifty cents per piece, one of which is to be left for a pattern to make them by ; one half to be made in forty-five days, the other half in six months.

Campton, March 26th, 1850.

(Signed)       JOEL PIERCE."

Indorsement :

" May 10th, 1850, Received two hundred and thirty-two

Pierce *v*. Smith.

clothes-horses on the within obligation, valued at one hundred and sixteen dollars."

When the evidence tending to show the declarations of Smith that he was to find the wire himself, was offered, the defendant objected to their admission, on the ground that they tended to alter the written contract. The court ruled that the parties must be governed by the written contract, as set out in the pleadings, but that the declarations might have a legal bearing upon the question whether the articles delivered were clothes-horses or not, and should be received for such purpose, and that the objection of variance would be disposed of when the evidence was all in, upon a motion for a nonsuit, if one should be made. No exception was taken to this ruling; but after all the evidence herein reported had been laid before the jury, the defendant asked for a nonsuit; and also contended that there was no evidence that Smith ever accepted the new hubs. But the court ruled that there was competent evidence tending to make out a case for the plaintiff, upon all the material points in issue; to which ruling the defendant excepted.

The court instructed the jury, among other things, that the plaintiff must prove a payment and acceptance in the manner alleged, and on or before the times alleged, but that proof of payment before, would sustain the averment of payment at the day, and the pattern made and agreed upon by the parties would answer sufficiently the designation of a pattern left with Smith, as stated in the condition of the bond.

The court also instructed the jury that the plaintiff must prove that the articles delivered and accepted were substantially clothes-horses, and like the pattern so made by the parties, and they would decide upon all the evidence whether the articles delivered were clothes-horses or not; and that it was competent to find, from the facts proved, that the new hubs were accepted by Smith, if they believed the testimony warranted the inference.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, because of the rulings and instructions of the court. And the questions arising upon the motion were transferred to this court for determination.

*E. A. Hibbard*, for the defendant.

I. As to the time of payment and acceptance, the court erred in charging the jury that proof of payment before the day would sustain the averment of payment at the day. Taking issue on the day, made it necessary for the plaintiff to prove payment on that day and on no other. If the day was not material, the defendant's traverse was bad, and the plaintiff should have demurred. After a party has joined issue, if his proof fails he is estopped from saying that the issue was immaterial. According to the ruling of the court, the allegations of payment, May 10th and September 26th, would have been sustained by proof of payment March 26th. This would seem to be entirely erroneous.

The day was material, and so it was necessary for the plaintiff to join issue on the defendant's traverse. According to the opinion of the court, there was some materiality to it, for they held that proof of payment after the 26th would be insufficient. At best it was a case where a material allegation had been alleged with too much particularity, and the plaintiff had bound himself to prove more than was necessary. According to the condition of the bond, the plaintiff was bound to deliver and the defendant to accept on the 26th, and not before or after. He pleaded that he had delivered and the defendant had accepted on that day, and not before or after. The defendant traversed the delivery and acceptance on that day, and the plaintiff joined issue. According to the opinion of the court, the rejoinder should have denied the delivery and acceptance on the 26th, or before. Proof of delivery and acceptance on or before, was admitted to sustain a positive averment of delivery and acceptance on the 26th. This was wrong.

II. As to the pattern, the court erred in charging the jury that the pattern made and agreed upon by the parties would answer sufficiently the designation of a pattern left with Smith, as stated in the condition of the bond. The pattern referred to in the condition of the bond was left by Pierce with Smith, but the pattern made and agreed upon by the parties was retained by Pierce and not left with Smith. The plaintiff in his replication took it upon him to prove that the clothes-horses alleged to have been delivered were " such as is described in said writing obligatory," that is, like the pattern left with Smith ; but he not only did not prove it, but he did prove that they were like a different pattern. The whole evidence relating to the pattern *not* left with Smith, was inadmissible, both because it contradicted and varied the sealed contract, and because there was a fatal variance between it and the pleadings.

III. As to the name of the article; the court erred in not granting a non-suit for this cause. The plaintiff was bound to pay in clothes-horses, but the proof was that he paid, if at all, in parts of clothes-horses not put together. He did not even furnish all the parts. There was a fatal variance between the pleadings and the evidence in this respect. There can be no pretence that the jury thought the articles were clothes-horses. They merely thought they were like the pattern " so made by the parties and *not* left with Smith."

IV. As to the new hubs, the court erred in charging the jury that it was competent to find from the facts proved, that the new hubs were accepted. An examination of the case will show that there was no evidence tending to prove an acceptance, and the court ought so to have instructed the jury.

The principles of law applicable to the case may be perhaps not so much in controversy. The difficulty is in their application. We would however refer the court to Stephens

on Pleading, 425, and to 1 Chitty's Pleading, 228, 611, and cases there cited.

*Bellows*, with whom was *Leverett*, for the plaintiff.

I. Proof of delivery before the 26th of September, maintains the allegation of delivery on that day. It will be regarded that the defendant held it in trust till the 26th. And this is the effect of the instructions. 4 Philips' Ev. 170 ; *Sturdy* v. *Arnaud*, 3 Term Rep. 601. In that case, *Buller*, J., says, " there is an old case which said that payment before the day would not discharge the bond ; but in the first place that case has been frequently overruled ; and if still law, would not govern this case, because it has been held that the obligor may plead it as payment *at* the day, and this would be evidence of such payment."

II. As to the pattern ; the bond was to pay in clothes-horses at fifty cents each, " one of which he leaves with me as a pattern." So the bond being that of the defendant, it refers to a sample left with the defendant. The condition precedent is the payment of a note. By the note the pattern appears to be left with the plaintiff; and this doubtless was the meaning of the parties. But it is immaterial. A clothes-horse was made and left with the plaintiff as a sample, and the rest were made by it. If there was another left with the defendant, the jury might well find that the one left with the plaintiff was like the other, and to be the sample. It was not necessary that the one left with Smith should be in the plaintiff's shop. It is enough that the plaintiff made them like it, and that is sufficiently shown. So the proof is well enough that this was the one left with Smith. It is not necessary that Smith should have carried it off. It was made and treated as a pattern, and must be regarded as in all respects conforming to the contract, it having been so agreed. It is clear that the jury might, on the evidence, have found this to be the one left with Smith,

as it might as well be in the plaintiff's shop where it was wanted, as any where. ·

III. The allegation of payment in clothes-horses such as are described in the bond, is sustained by proof of payment in what was substantially clothes-horses, and according to the sample. It is true they were not wired together, and so they were like the pattern; but having been received and accepted as clothes-horses, the defendant cannot now say they were not. He is estopped.

IV. The new hubs were deposited with the defendant's frames, where they should be, and the defendant notified; and he gave his assent and promised to come down soon and take away the whole.

It was not necessary that he should take them into his actual manual possession, any more than if left in his own house or stable. It was obviously a question for the jury.

EASTMAN, J. Most of the questions presented in this case are mere questions of fact, and must be regarded as having been settled by the jury. The land specified in the bond amounted to $210. One half of this was to be paid in forty-five days, which would be May 10th, 1850, and the other half in six months, which would be September 26th.

Two hundred and thirty-two of the clothes-horses, as prepared, were taken by Smith May 10th, amounting to $116, and this sum was indorsed upon the note. One hundred and five dollars of this amount fulfilled the contract up to May 10th; for the defendant, having taken the articles and carried them away without raising any objection as to the manner in which they were made, and having indorsed the amount upon the note, no controversy can exist in regard to them, and to the $105, payment, then made.

The remainder fell due September 26th; and the evidence tends to show that one hundred and eighty-eight more of the articles were about that time delivered to the defendant and accepted by him. These, amounting to $94, would,

together with the eleven dollars overpaid in May, make the other payment of $105.

But it is contended that the payment of the eleven dollars made in May, cannot be transferred to the $94, so as to sustain the allegation of payment on the day set forth in September. But this view of the law is erroneous. The money or the articles can be regarded as held in trust by the defendant until the day of payment. If a party voluntarily receives and accepts money, or any personal property, which by contract he is to receive on a subsequent day, he is ordinarily benefited by its reception. At all events, he is not bound to receive it unless he chooses; but having received it, he holds it, in law as well as in fact, until the day on which the payment is to be made, to be then applied. And the law will regard him as trustee for the payer, and apply the payment when due.

The question as to the completion of the articles, according to the contract, has been settled by the jury. The evidence was competent to show not only a pattern made according to the agreement, and the articles furnished according to the pattern, but that the articles themselves were accepted as sufficient.

We discover no error in the ruling of the court, and there must be

*Judgment on the verdict.*